**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| LATEEF MURDOCK, LORETTE KENNEY, GWEN LEWI, MARCEL PEREZ PIRIO, LAYNE BARTER, JOSE CORTEZ HERNANDEZ, ROBERT LUNDIN, JAEDON DANIELS, MYCHAEL WILLON, AMY WEINBERG, DIMITRI LAMDON, ELIE EL RAI, TATYANA DEKHTYAR, OLIVIA RODESTA, and LAUREN DEBELISO individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>  vs.<br><br>RB HEALTH (US) LLC,<br>BAYER HEALTHCARE, LLC<br>GLAXOSMITHKLINE CONSUMER HEALTHCARE HOLDINGS (US), LLC, JOHNSON & JOHNSON CONSUMER INC., KENVUE, INC., PROCTER & GAMBLE COMPANY, HALEON PLC, and PFIZER, INC.<br><br>        Defendants. | Case No.  2:23-cv-5846<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

## TABLE OF CONTENTS

Page No.

I.    SYNOPSIS .................................................................................................................1

II.   JURISDICTION AND VENUE ....................................................................................3

III.  PARTIES ....................................................................................................................4

IV.   FACTUAL ALLEGATIONS ......................................................................................14

      A.    Background on the Products and Product Claims.............................................14

      B.    Plaintiff and Reasonable Consumers Were Misled by the Challenged
            Representations ..............................................................................................18

V.    CLASS ALLEGATIONS ...........................................................................................20

CAUSES OF ACTION .......................................................................................................24

      COUNT ONE ...........................................................................................................24

      COUNT TWO ...........................................................................................................26

      COUNT THREE ........................................................................................................27

            "Unfair" Prong .............................................................................................29

            "Fraudulent" Prong .......................................................................................31

            "Unlawful" Prong .........................................................................................32

      COUNT FOUR ..........................................................................................................33

      COUNT FIVE ...........................................................................................................34

      COUNT SIX ..............................................................................................................35

      COUNT SEVEN ........................................................................................................36

      COUNT EIGHT .........................................................................................................38

      COUNT NINE ...........................................................................................................40

      COUNT TEN .............................................................................................................42

      COUNT ELEVEN ......................................................................................................44

      COUNT TWELVE .....................................................................................................46

      COUNT THIRTEEN ..................................................................................................48

COUNT FOURTEEN ......................................................................................................49

COUNT FIFTEEN...........................................................................................................51

PRAYER FOR RELIEF ..............................................................................................................52

DEMAND FOR JURY TRIAL ...................................................................................................53

Plaintiffs Lateef Murdock, Lorette Kenney, Gwen Lewi, Marcel Perez Pirio, Layne Barter, Jaedon Daniels, Jose Cortez Hernandez, Robert Lundin, Mychael Willon, Amy Weinberg, Dimitri Lamdon, Elie El Rai, Tatyana Dekhtyar, Olivia Rodesta, and Lauren Debeliso ("**Plaintiffs**"), individually, and on behalf of all other similarly situated purchasers, as more fully described herein (the "**Class**"), bring this class action complaint against RB Health (US), LLC, Bayer HealthCare, LLC, GlaxoSmithKline Consumer Healthcare Holdings (US), LLC, Johnson & Johnson Consumer, Inc., Kenvue, Inc., Procter & Gamble Company, and Pfizer, Inc. (collectively, "**Defendants**"). Plaintiffs' allegations are based upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiffs' attorneys.

## I.   SYNOPSIS

1.     This putative class action arises from Defendants' decades-long consumer fraud, marketing over the counter ("OTC") nasal decongestants containing phenylephrine (the "Products")[1] to sick consumers even though phenylephrine does not alleviate congestion.

2.     The Food and Drug Administration's Drug Advisory Committee ("FDA Committee") has unanimously concluded that, "the current scientific data do not support that the recommended dosage of orally administered phenylephrine is effective as a nasal decongestant."[2]

3.     The scientific community and phenylephrine producers such as Defendants have known for decades that phenylephrine does not have a decongestive effect. As early as 1993, manufacturers were on notice that the so-called active ingredient would be destroyed in the stomachs of unsuspecting consumers, never making it to their bloodstream, a far cry from reaching bioavailability in the nose.[3]  In 2007, further evidence mounted when scientists ran data from the

---

[1] *See* "Appendix 1" attached hereto for full list of Products.

[2] Press Release, Food and Drug Administration, FDA Clarifies Results of Recent Advisory Committee Meeting on Oral Phenylephrine (Sept. 14, 2023) Accessed: https://www.fda.gov/drugs/drug-safety-and-availability/fda-clarifies-results-recent-advisory-committee-meeting-oral-phenylephrine

[3] Leslie Hendeles, *Selecting a Decongestant*. 13(6 Pt 2) PHARMACOTHERAPY 129S-134S; discussion 143S-146S (1993).

1970s through modern analysis software and determined that oral phenylephrine was no better than a placebo.[4]

4.      The FDA Committee's 89-page report lists studies ranging from as late as 1971 to as recently as 2016 proving that oral phenylephrine will not alleviate congestion.[5] Manufacturers such as Defendants know and have known about these studies. Sick consumers did not.

5.      In the face of robust scientific evidence that oral phenylephrine-based decongestants are ineffective, Defendants continue to mislead consumers by advertising and marketing their medication as a nasal decongestant (hereinafter referred to as "**Challenged Representations**.")

6.      **The Deception**. By advertising and marketing the Products as nasal decongestants, Defendants mislead reasonable consumers, including Plaintiffs, into believing the Products are effective nasal decongestants when they are not.

7.      Reasonable consumers understand the Challenged Representations to mean the Products are effective decongestants. But because the Products' so-called active ingredient is phenylephrine, they do not alleviate congestion.

8.      Consumers are harmed by paying a premium for the health claims touted by Defendant that are untrue. If consumers had been aware that phenylephrine-containing products were ineffective as nasal decongestants, they would not have purchased them, or would have paid substantially less for them.

9.      Accordingly, Plaintiffs and all other purchasers of Defendants' oral phenylephrine products seek to hold Defendants accountable for their violations of consumer protection statutes, breaches of warranties, and deceptions. Defendants chose to market and advertise the Products to

---

[4] Randy Hatton & Leslie Hendeles, et al, *Efficacy and Safety of Oral Phenylephrine: Systematic Review and Meta-Analysis*. 41 THE ANNALS OF PHARMACOTHERAPY. 381-90. (2007)
[5] Eli Meltzer, Paul Ratner, and Thomas McGraw, *Phenylephrine Hydrochloride Modified-Release Tablets for Nasal Congestion: a Randomized, Placebo-Controlled Trial in Allergic Rhinitis Patients*, 116(1) ANN ALLERGY ASTHMA IMMUNOL, 66-71. (2016)

vulnerable consumers suffering from illness despite the mountain of scientific evidence proving the Products are ineffective.

10.    **Primary Dual Objectives**. Plaintiffs bring this action individually and on behalf of those similarly situated who purchased the Products during the relevant Class Period (Class defined *infra*), for dual primary objectives: ***One***, Plaintiffs seek, on their behalf and on behalf of the Class, injunctive relief to stop Defendants' unlawful manufacture, marketing, and sale of the Products as described herein to avoid or mitigate the risk of deceiving the public into believing the Products can provided the advertised benefits, by requiring that Defendant change its business practices, which may include one or more of the following: discontinue making, marketing, and/or selling the Products. ***Two***, Plaintiffs seek on their behalf and on behalf of the Class, monetary recovery of the premium consumers paid for the Products due to the false and deceptive marketing and advertising, consistent with permissible law (including, for example, damages, restitution, disgorgement, and any applicable penalties/punitive damages solely as to those causes of action so permitted).

## II.    <u>JURISDICTION AND VENUE</u>

11.    This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. Section 1332, because: (i) the Class consists of 100 or more members; (ii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (iii) minimal diversity exists because at least one Plaintiff (LA) and Defendants are citizens of different states. This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. Section 1367.

12.    Venue is proper in this District under 28 U.S.C. Section 1391 because a substantial part of the events, omissions, and acts giving rise to Plaintiffs' claims occur in this District. Defendant markets and sells Products in this District, Defendant gains substantial revenue and profits from doing business in this District, and consumers pay Defendant in this District.

13.    Defendants are subject to personal jurisdiction in Louisiana based upon sufficient minimum contacts that exist between each Defendant and Louisiana. Defendants are authorized to

do and are doing business in Louisiana, and Defendants advertise and solicit business in Louisiana. Defendants have purposefully availed themselves of the protections of Louisiana law and should reasonably expect to defend themselves in court in Louisiana for harm arising out of their pervasive contacts with Louisiana.

## III.    PARTIES

14.    **Plaintiff Lateef Murdock.** The following is alleged based upon Plaintiff Murdock's personal knowledge:

    a.    **Residence**. Plaintiff is, and at all relevant times was, a resident of California residing in the county of Los Angeles.

    b.    **Purchase Details and Background Information**. Plaintiff purchased "Mucinex Sinus Max," manufactured by Defendant RB Health, "Benadryl Allergy Plus Congestion," manufactured by Defendants Johnson & Johnson and Kenvue, and "Alka-Seltzer Cold and Cough," manufactured by Defendant Bayer HealthCare. All of Plaintiff's purchases were made in California within the last two years.

15.    **Plaintiff Lorette Kenney.** The following is alleged based upon Plaintiff Kenney's personal knowledge:

    a.    **Residence**. Plaintiff is, and at all relevant times was, a resident of Maryland residing in the county of Carroll.

    b.    **Purchase Details and Background Information**. Plaintiff purchased "Mucinex Sinus Max," manufactured by Defendant RB Health, "Tylenol Cold + Flu" and "Sudafed Sinus Congestion," manufactured by Defendants Johnson & Johnson and Kenvue, "Theraflu ExpressMax," manufactured by Defendants GlaxoSmithKline and Haleon, and "DayQuil" and "NyQuil," manufactured by Defendant Procter & Gamble. All of Plaintiff's purchases were made in Maryland within the last two years.

16.    **Plaintiff Gwen Lewi.** The following is alleged based upon Plaintiff Lewi's personal knowledge:

    a. **Residence**. Plaintiff is, and at all relevant times was, a resident of California residing in the county of Los Angeles.

    b. **Purchase Details and Background Information**. Plaintiff purchased "DayQuil" and "NyQuil," manufactured by Defendant Procter & Gamble, and "Mucinex Sinus-Max" manufactured by Defendant RB Health. All of Plaintiff's purchases were made in California within the last two years.

17.     **Plaintiff Marcel Perez Pirio.** The following is alleged based upon Plaintiff Pirio's personal knowledge:

    a. **Residence**. Plaintiff is, and at all relevant times was, a resident of New Jersey residing in the county of Essex.

    b. **Purchase Details and Background Information**. Plaintiff purchased "Mucinex Sinus-Max," manufactured by Defendant RB Health, "Theraflu ExpressMax," manufactured by Defendants GlaxoSmithKline and Haleon, and "DayQuil" and "NyQuil," manufactured by Defendant Procter & Gamble. All of Plaintiff's purchases were made in New Jersey within the last two years.

18.     **Plaintiff Layne Barter.** The following is alleged based upon Plaintiff Barter's personal knowledge:

    a. **Residence**. Plaintiff is, and at all relevant times was, a resident of North Carolina.

    b. **Purchase Details and Background Information**. Plaintiff Barter purchased "Mucinex Sinus-Max," manufactured by Defendant RB Health and "Tylenol Cold & Flu" manufactured by Defendants Johnson & Johnson and Kenvue. All of Plaintiff's purchases were made in North Carolina within the last two years.

19.     **Plaintiff Jaedon Daniels.** The following is alleged based upon Plaintiff Daniel's personal knowledge:

    a. **Residence**. Plaintiff is, and at all relevant times was, a resident of Connecticut residing in the county of New Haven.

    b. **Purchase Details and Background Information**. Plaintiff purchased Mucinex Day Relief Tabs, manufactured by Defendant RB Health. Plaintiff's purchases were made in Connecticut within the last two years.

20.    **Plaintiff Jose Cortez Hernandez.** The following is alleged based upon Plaintiff Hernandez's personal knowledge:

    a. **Residence**. Plaintiff is, and at all relevant times was, a resident of California residing in the county of Los Angeles.

    b. **Purchase Details and Background Information**. Plaintiff purchased "Mucinex Sinus-Max," manufactured by Defendant RB Health, "Theraflu ExpressMax," manufactured by Defendants GlaxoSmithKline and Haleon, and "NyQuil," manufactured by Defendant Procter & Gamble. All of Plaintiff's purchases were made in California within the last two years.

21.    **Plaintiff Robert Lundin.** The following is alleged based upon Plaintiff Lundin's personal knowledge:

    a. **Residence**. Plaintiff is, and at all relevant times was, a resident of Texas residing in the county of Harris.

    b. **Purchase Details and Background Information**. Plaintiff purchased "DayQuil," manufactured by Defendant Procter & Gamble, and "Alka-Seltzer Cold and Cough", manufactured by Defendant Bayer HealthCare. All of Plaintiff's purchases were made in Texas within the last two years.

22.    **Plaintiff Amy Weinberg.** The following is alleged based upon Plaintiff Weinberg's personal knowledge:

    a. **Residence**. Plaintiff is, and at all relevant times was, a resident of Louisiana, residing in the county of Orleans Parish.

    b. **Purchase Details and Background Information**. Plaintiff purchased "Mucinex Sinus Max," manufactured by Defendant RB Health, "Tylenol Cold + Flu" and "Sudafed Sinus Congestion," manufactured by Defendants Johnson & Johnson and

Kenvue, and "DayQuil" and "NyQuil," manufactured by Defendant Procter & Gamble. All of Plaintiff's purchases were made in Louisiana within the last year.

23.      **Plaintiff Dimitri Lamdon.** The following is alleged based upon Plaintiff Lamdon's personal knowledge:

   a.  **Residence**. Plaintiff is, and at all relevant times was, a resident of New York residing in the county of Kings.

   b.  **Purchase Details and Background Information**. Plaintiff purchased "Mucinex Sinus Max," manufactured by Defendant RB Health, and "DayQuil" and "NyQuil," manufactured by Defendant Procter & Gamble. All of Plaintiff's purchases were made in New York within the last two years.

24.      **Plaintiff Mychael Willon**. The following is alleged based upon Plaintiff Willon's personal knowledge:

   a.  **Residence**. Plaintiff is, and at all relevant times was, a resident of Virginia residing in the county of James City.

   b.  **Purchase Details and Background Information**. Plaintiff purchased "Sudafed Sinus Congestion," manufactured by Defendants Johnson & Johnson and Kenvue. All of Plaintiff's purchases were made in Virginia within the last two years.

25.      **Plaintiff Elie El Rai**. The following is alleged based upon Plaintiff El Rai's personal knowledge:

   a.  **Residence**. Plaintiff is, and at all relevant times was, a resident of California residing in the county of Riverside.

   b.  **Purchase Details and Background Information**. Plaintiff purchased "NyQuil," manufactured by Defendant Procter & Gamble, and "Tylenol Cold + Flu" manufactured by Defendants Johnson & Johnson and Kenvue. All of Plaintiff's purchases were made in California within the last two years.

26.      **Plaintiff Tatyana Dekhtyar**. The following is alleged based upon Plaintiff Dekhtyar's personal knowledge:

a. **Residence**. Plaintiff is, and at all relevant times was, a resident of New York residing in the county of Kings.

b. **Purchase Details and Background Information**. Plaintiff purchased "Advil Sinus Congestion & Pain," manufactured by Defendants Pfizer and Haleon. All of Plaintiff's purchases were made in New York within the last two years.

27.     **Plaintiff Olivia Rodesta**. The following is alleged based upon Plaintiff Rodesta personal knowledge:

a. **Residence**. Plaintiff is, and at all relevant times was, a resident of Illinois residing in the county of Cook.

b. **Purchase Details and Background Information**. Plaintiff purchased "Mucinex Sinus Max," manufactured by Defendant RB Health, "Tylenol Sinus + Headache" and "Tylenol Sinus Severe" manufactured by Defendants Johnson & Johnson and Kenvue, "DayQuil Severe Cold + Flu," and "DayQuil Cold + Flu" manufactured by Defendant Procter & Gamble, "Advil Sinus Congestions & Pain," manufactured by Pfizer, and "Advil Allergy & Congestion Relief," manufactured by Haleon. All of Plaintiff's purchases were made in Illinois within the last two years.

28.     **Plaintiff Lauren Debeliso**. The following is alleged based upon Plaintiff Debeliso personal knowledge:

a. **Residence**. Plaintiff is, and at all relevant times was, a resident of Illinois residing in the county of Cook.

b. **Purchase Details and Background Information**. Plaintiff purchased "Mucinex Sinus Max," manufactured by Defendant RB Health, "DayQuil Cold + Flu" and "NyQuil," manufactured by Defendant Procter & Gamble. All of Plaintiff's purchases were made in Illinois within the last two years.

29.     **Reliance on Challenged Representations**. In making their purchases, Plaintiffs relied on Defendants' marketing and advertising claims, that the Products relieve nasal

decongestion. Plaintiffs understood the Products' advertising to mean the Products would be suitable for relieving their congestion.

30.    **Causation/Damages**. Plaintiffs would not have purchased the Products, or would not have paid as much for them, had they known they could not provide the advertised benefits.

31.    **Desire to Repurchase**. Plaintiffs continue to see the Products available for purchase and would like to be able to purchase them again in the future, but only if they could be sure the Products were compliant with state and federal consumer protection laws.

32.    **Lack of Personal Knowledge and Expertise**. Plaintiffs are not personally familiar with, and do not possess any specialized knowledge skill, experience, or education, in the manufacture of OTC medication. Therefore, plaintiffs have no way of determining whether Defendants' Products can provide decongestive relief.

33.    **Inability to Rely**. Plaintiffs are, and continue to be, unable to rely on the Products' representations, statements, or function as they are advertised.

34.    **Plaintiffs' Future Harm**. Defendants continue to market and sell the Products as effective nasal decongestants. Plaintiffs want to purchase the Products in the future if they can be sure the Products can provide the advertised benefits. However, Plaintiffs are average consumers who are not sophisticated in, for example, the ingredients that go into making OTC medication, like the Products, and Plaintiffs cannot determine if the Products can achieve their advertised benefits. Since Plaintiffs would like to purchase the Products again—even though the Products currently cannot achieve the advertised benefits—Plaintiffs would likely and reasonably, but incorrectly, assume the Products can achieve the advertised benefits. Accordingly, Plaintiffs are at risk of reasonably, but incorrectly, assuming Defendants have fixed the Products such that Plaintiffs may buy them again, believing they can achieve the advertised benefits of congestion relief. In this regard, Plaintiffs are currently and, in the future, deprived of the ability to rely on the Products' advertising and marketing. However, an injunction prohibiting use of the Challenged Representations unless true would enable Plaintiffs to rely confidently on the Products' advertising and marketing in making their future purchase decisions.

35.      **Defendant RB Health (US) LLC** is a limited liability corporation with United States headquarters in Parsippany, New Jersey. Defendant is a wholly owned subsidiary of Reckitt Benckiser Group, LLC, a public limited company registered in England and Wales. Defendant, directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the state of Louisiana. Defendant is the owner, manufacturer, and/or distributor of the Products, and is a company that created and/or authorized the false, misleading, and deceptive marketing and advertising for the Products. Defendant and its agents manufactured, advertised, marketed, and sold the Products at issue nationwide and in this judicial district. The unfair, unlawful, deceptive, and misleading false advertising claims on the Products were prepared, authorized, ratified, and/or approved by Defendant and its agents, and, accordingly, disseminated throughout the state of Louisiana and nationwide by Defendant and its agents to deceive and mislead consumers into purchasing the Products.

36.      Defendant manufactures and markets products under the "Mucinex" brand name which contain phenylephrine and purporting to provide decongestive relief. **Appendix 1**.

37.      **Defendant Bayer HealthCare LLC** is a limited liability company with United States headquarters in Whippany, New Jersey. Bayer HealthCare is a wholly owned subsidiary of Bayer USA, which in turn is a wholly owned subsidiary of Bayer AG, a public company registered in Germany. Defendant, directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the state of Louisiana. Defendant is the owner, manufacturer, and/or distributor of the Products, and is a company that created and/or authorized the false, misleading, and deceptive marketing and advertising for the Products. Defendant and its agents manufactured, advertised, marketed, and sold the Products at issue nationwide and in this judicial district. The unfair, unlawful, deceptive, and misleading false advertising claims on the Products were prepared, authorized, ratified, and/or approved by Defendant and its agents, and, accordingly, disseminated throughout the state of Louisiana and nationwide by Defendant and its agents to deceive and mislead consumers into purchasing the Products.

38.     Defendant manufactures, markets, and sells "Alka-Seltzer" branded products containing phenylephrine and purporting to provide decongestive relief. **Appendix 1**.

39.     **Defendant Johnson & Johnson Consumer, Inc**. is a public company registered in New Jersey with US headquarters in New Brunswick, New Jersey. Defendant, directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the state of Louisiana. Defendant was the owner, manufacturer, and/or distributor of the Products, and is a company that created and/or authorized the false, misleading, and deceptive marketing and advertising for the Products. Defendant and its agents manufactured, advertised, marketed, and sold the Products at issue nationwide and in this judicial district. The unfair, unlawful, deceptive, and misleading false advertising claims on the Products were prepared, authorized, ratified, and/or approved by Defendant and its agents, and, accordingly, disseminated throughout the state of Louisiana and nationwide by Defendant and its agents to deceive and mislead consumers into purchasing the Products.

40.     Johnson & Johnson manufactures, markets, and sells "Tylenol Cold + Flu Severe," "Tylenol Sinus + Headache," "Tylenol Sinus Severe," "Benadryl," and "Sudafed Sinus Congestion," containing phenylephrine and purporting to provide decongestive relief. **Appendix 1**.

41.     **Defendant Kenvue, Inc.** is a Delaware public company with US headquarters and principal place of business in Skillman, New Jersey. On information and belief, all assets and liabilities associated with the Products manufactured, sold, and marketed by Johnson & Johnson are now owned by Kenvue. Prior to 2022, and within the relevant class period, Johnson & Johnson were responsible for all acts giving rise to all causes of action herein. Defendant, directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the state of Louisiana. Defendant is the owner, manufacturer, and/or distributor of the Products, and is a company that created and/or authorized the false, misleading, and deceptive marketing and advertising for the Products. Defendant and its agents manufactured, advertised, marketed, and sold the Products at issue nationwide and in this judicial district. The unfair,

unlawful, deceptive, and misleading false advertising claims on the Products were prepared, authorized, ratified, and/or approved by Defendant and its agents, and, accordingly, disseminated throughout the state of Louisiana and nationwide by Defendant and its agents to deceive and mislead consumers into purchasing the Products.

42.     Kenvue manufactures, markets, and sells "Tylenol Cold + Flu Severe," "Benadryl," and "Sudafed Sinus Congestion," containing phenylephrine and purporting to provide decongestive relief. **Appendix 1**.

43.     **Defendant Procter & Gamble Company ("P&G")** is an Ohio corporation with its headquarters and principal place of business at One Procter & Gamble Plaza, Cincinnati, Ohio 45202. P&G, directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the state of Louisiana. P&G is the owner, manufacturer, and/or distributor of the Products, and is a company that created and/or authorized the false, misleading, and deceptive marketing and advertising for the Products. P&G and its agents manufactured, advertised, marketed, and sold the Products at issue nationwide and in this judicial district. The unfair, unlawful, deceptive, and misleading false advertising claims on the Products were prepared, authorized, ratified, and/or approved by Defendant and its agents, and, accordingly, disseminated throughout the state of Louisiana and nationwide by Defendant and its agents to deceive and mislead consumers into purchasing the Products.

44.     P&G manufactures, markets, and sells "Sinex," "Vicks DayQuil" and "NyQuil" branded products containing phenylephrine and purporting to provide decongestive relief. **Appendix 1**.

45.     **Defendant Pfizer Inc.** is a New York corporation with its headquarters and principal place of business at 66 Hudson Boulevard, New York, NY 10001. Pfizer, directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the state of Louisiana. Pfizer was the owner, manufacturer, and/or distributor of the Products, and is a company that created and/or authorized the false, misleading, and deceptive marketing and advertising for the Products. Pfizer and its agents manufactured, advertised,

marketed, and sold the Products at issue nationwide and in this judicial district. The unfair, unlawful, deceptive, and misleading false advertising claims on the Products were prepared, authorized, ratified, and/or approved by Defendant and its agents, and, accordingly, disseminated throughout the state of Louisiana and nationwide by Defendant and its agents to deceive and mislead consumers into purchasing the Products.

46.    Pfizer manufactured, marketed, and sold "Advil Sinus Congestions & Pain" products containing phenylephrine and purporting to provide decongestive relief until 2022. **Appendix 1**.

47.    **Defendant GlaxoSmithKline Consumer Healthcare Holding (US), LLC** is a limited public company registered in England with United States headquarters in Warren, New Jersey. Defendant, directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the state of Louisiana. Defendant is the owner, manufacturer, and/or distributor of the Products, and is a company that created and/or authorized the false, misleading, and deceptive marketing and advertising for the Products. Defendant and its agents manufactured, advertised, marketed, and sold the Products at issue nationwide and in this judicial district. The unfair, unlawful, deceptive, and misleading false advertising claims on the Products were prepared, authorized, ratified, and/or approved by Defendant and its agents, and, accordingly, disseminated throughout the state of Louisiana and nationwide by Defendant and its agents to deceive and mislead consumers into purchasing the Products.

48.    Defendant manufactured, marketed, and sold "Theraflu" branded products containing phenylephrine and purporting to provide decongestive relief until 2022. **Appendix 1**.

49.    **Defendant Haleon, plc** is a limited public company registered in England and Wales with United States headquarters in Warren, New Jersey. On information and belief, all assets and liabilities associated with the Products manufactured, sold, and marketed by Defendants GlaxoSmithKline and Pfizer are now owned by Haleon. Prior to 2022, and within the relevant class period, GlaxoSmithKline and Pfizer were responsible for all acts giving rise to all causes of action herein. Defendant, directly and through its agents, has substantial contacts with and receives

substantial benefits and income from and through the state of Louisiana. Defendant is the owner, manufacturer, and/or distributor of the Products, and is a company that created and/or authorized the false, misleading, and deceptive marketing and advertising for the Products. Defendant and its agents manufactured, advertised, marketed, and sold the Products at issue nationwide and in this judicial district. The unfair, unlawful, deceptive, and misleading false advertising claims on the Products were prepared, authorized, ratified, and/or approved by Defendant and its agents, and, accordingly, disseminated throughout the state of Louisiana and nationwide by Defendant and its agents to deceive and mislead consumers into purchasing the Products.

50.     Haleon manufactures, markets, and sells "Theraflu Expressmax," "Advil Sinus Congestion & Pain," and "Advil Allergy & Congestion Relief," manufactured by Haleon containing phenylephrine and purporting to provide decongestive relief. **Appendix 1**.

IV.     **FACTUAL ALLEGATIONS**

A.      **Background on Products and Product Claims**

51.     **Phenylephrine Market**.  There are two leading active ingredients found in oral nasal decongestant products: phenylephrine and pseudoephedrine. Phenylephrine completely replaced pseudoephedrine in over-the-counter medication following the Combat Methamphetamine Epidemic Act in 2005, since the latter was a common ingredient in illegal methamphetamine production.[6]

52.     Pseudoephedrine *is* an effective decongestant, but following its misuse, is incredibly inconvenient to buy. Pharmacies are required to hold pseudoephedrine behind the counter, where it must be asked for. Consumers are limited in the amount they can purchase and often are required to provide identifying and personal information so all pseudoephedrine can be tracked.

53.     Accordingly, since 2004, when pseudoephedrine was slated to move behind-the-counter, phenylephrine has been the preferred active ingredient for manufacturers of OTC oral

_____

[6] Combat Methamphetamine Epidemic Act of 2005, Pub. L. No. 109-177, § 701 *et seq.*, 120 Stat. 192.

nasal decongestants. Just last year (2022), phenylephrine-based decongestants yielded a massive $1.76 billion in sales.

54.     **FDA Committee.** On September 11 and 12 of this year, the FDA's non-prescription Drug Advisory Committee met to discuss the efficacy of oral phenylephrine as a nasal decongestant. The FDA Committee was unanimous in finding that oral phenylephrine was no more effective than a placebo at relieving congestion.

55.     **Phenylephrine is Ineffective.** Nasal decongestants purportedly work by decreasing swelling in sinus cavities, the nose, and the ears, to make it easier to breathe and ease discomfort.[7] However, phenylephrine is quickly metabolized in the stomach, rendering it unavailable to travel through a bloodstream and to the sinuses. For example, only 38% of a phenylephrine dose will reach circulation in the sinuses while 90% of the same dose pseudoephedrine will reach its target.[8] Phenylephrine is so quickly metabolized that it has no effect on decongestion.[9]

56.     One study took data from the 1970s, when phenylephrine was first approved by the FDA, to 2007, and subjected it to the rigors of modern research practices and computer analysis. Analyzing that data, the authors concluded that, by each of their markers, phenylephrine was no more effective than a placebo.[10]

57.     As a result of this study, the lead scientists, Randy Hutton, PharmD and Leslie Hendeles, PharmD, *et al*, filed a citizen's petition asking the FDA to require better proof of phenylephrine's efficacy.[11] The Drug Advisory Committee convened in 2007 and concluded that

---

[7] *Phenylephrine 10mg Tablet Oral Decongestants- Uses, Side Effects, and* More, WEBMD, https://www.webmd.com/drugs/2/drug-21821/phenylephrine-oral/details (Accessed Sept 21, 2023).

[8]     Isadore    Kanfer,    Roslind    Dowse    &    Vusumuzi    Vuma, *Pharmacokinetics    of    Oral Decongestants*, 13 PHARMACOTHERAPY 6 PART 2, 116-28S (1993).

[9] Understanding Phenylephrine Metabolism, Pharmacokinetics, Bioavailability and Activity, Briefing Document    for    the    Nonprescription    Drugs    Advisory    Committee,    (Available    from: http://www.fda.gov/ohrms/dockets/ac/07/briefing/2007-4335b1-01-Schering-Plough.pdf) (2007).

[10] Randy Hatton & Leslie Hendeles, et al, *Efficacy and Safety of Oral Phenylephrine: Systematic Review and Meta-Analysis*. 41 THE ANNALS OF PHARMACOTHERAPY. 381-90. (2007)

[11] Randy Hatton & Leslie Hendeles. *Citizens Petition—Phenylephrine, 2007P-0047/CP1*. (Available from: http://www.fda.gov/ohrms/dockets/dockets/07p0047/07p-0047

available evidence was "suggestive of efficacy," yet voted 9 to 12 that more studies were required.[12]

58.     The Drug Advisory Committee's 2007 report presented a meta-analysis replete with unpublished studies, driven largely by a single small study from a single laboratory (Elizabeth Biochemical), and relied on subjective self-reported symptom data of these faulty studies.[13] Despite cherry-picking the data, the FDA's conclusion was far from confident, simply stating that the evidence was "suggestive of efficacy."

59.     Defendants, as large multinational corporations that benefit greatly from the lucrative decongestant market, were aware of the 2007 Drug Advisory Committee's shoddy and self-interested findings, as well as of the preceding objective studies that directly contradicted any suggestion of efficacy.[14]

60.     Indeed, studies post-dating the 2007 committee also flatly contradicted its weak findings. One such report was provided by Schering–Plough Pharmaceuticals in 2009, manufacturers of Claritin, who had contemplated replacing pseudoephedrine with phenylephrine in their allergy medicine. The study, conducted in allergen exposure chambers to measure objective markers of decongestive relief, found no significant difference from a placebo when phenylephrine was administered.  Another study in 2009 utilized similar objective measurements to Schering-Plough and reached the same conclusion, contradicting the 2007 report entirely.[15]

---

-cp00001-01-vol1.pdf) (2007).

[12] Food and Drug Administration. *Summary Minutes of the Nonprescription Drugs Advisory Committee Meeting, December 14, 2007*. (Available from: http://www. fda.gov/ohrms/dockets/ac/07/minutes/2007-4335m1-Final.pdf) (2007).

[13] Chrtine Kollar, Heinz Schneider, Joel Waksman and Eva Krusinka, *Meta-Analysis of the Efficacy of a Single Dose of Phenylephrine 10 mg Compared with Placebo in Adults with Acute Nasal Congestion due to Common Cold*, 29 CLIN THER, 1057-70 (2007).

[14] Friedrich Horak, Petra Zieglmayer, René Zieglmayer, Patrick Lemell, Ruji Yao, Heribert Staudinger and Melvyn Danzig, *A Placebo-Controlled Study of the Nasal Decongestant Effect of Phenylephrine and Pseudoephedrine in the Vienna Challenge Chamber*, 102 ANN ALLERGY ASTHMA IMMUNOL, 116-20 (2009).

[15] James Day, Maureen Briscoe, Jodan Ratz, Melvyn Danzig and Ruji Yao, *Efficacy of loratadine-Montelukast on Nasal Congestion in Patients with Seasonal Allergic Rhinitis in an Environmental Exposure Unit*, 102 ANN ALLERGY ASTHMA IMMUNOL

61.    In contrast to the 2007 Drug Advisory Committee's reliance on subjective symptom scores in their meta-analysis, Hatton and Hendeles' own meta-analysis, which prompted the citizen's petition, relied exclusively on nasal airway resistance, an objective measure.[16] This year's Drug Advisory Committee remarked on how subjective data on decongestion was worthless, since tracking decongestion over a period of time would always result in lower congestion levels as the body naturally fights against the underlying cause of sickness.[17]

62.    In 2015, the largest study yet investigated phenylephrine's efficacy. With 539 subjects, the study *quadrupled* the Products' recommended dose (from 10mg to 40mg), the authors stated the phenylephrine was still "no more effective than a placebo."[18] The study postulated that this high a dose could have adverse health consequences in exchange for no congestion relief.

63.    The scientific consensus, unanimously vindicated by the FDA Committee, is that phenylephrine is ineffective.

64.    Defendants, as manufacturers of phenylephrine nasal decongestants and who benefit greatly from their position in a lucrative market, are aware of these studies, petitions, and committee findings. Despite their awareness, Defendants continue to market the Products as effective nasal decongestants, demanding a hefty price tag for a drug with no decongestive effect.

65.    Defendants knew that the basis for the FDA's approval of oral phenylephrine as a nasal decongestant as Generally Recognized As Safe and Effective ("GRASE") was faulty.

66.    Instead of informing the FDA that the GRASE status assigned to oral phenylephrine was inadequate, Defendants defrauded the FDA by intentionally failing to inform or withhold information from the FDA about the ineffectiveness of oral phenylephrine. Defendants acted knowingly and deliberately in order to continue to use the GRASE status as a shield to hide

---

328-38 (2009).

[16] Randy Hatton & Leslie Hendeles, et al, *Efficacy and Safety of Oral Phenylephrine: Systematic Review and Meta-Analysis*. 41 THE ANNALS OF PHARMACOTHERAPY. 381-90. (2007)

[17] NDAC Briefing Document, *Oral Phenylephrine in the CCABA Monograph*, at 52 (Available at https://www.fda.gov/media/171915/download) (2023).

[18] Eli Meltzer, Paul Ratner, and Thomas McGraw, *Oral Phenylephrine HCl for Nasal Congestion in Seasonal Allergic Rhinitis: A Randomized, Open-label, Placebo-controlled Study*, 3(5) J. OF ALLERGY & CLINICAL IMMUNOLOGY, 702-708 (2015).

under the protection of preemption and continue to manufacture and sell products Defendants knew were ineffective.

67.     **The Products' Substantial Similarity**. Plaintiffs, in aggregate, purchased "Mucinex Sinus-Max," "Tylenol Cold + Flu Severe," "Tylenol Sinus + Headache," "Tylenol Sinus Severe," "TherafluExpressMax," "Benadryl Allergy Plus Congestion," "Sudafed Sinus Congestion," "Advil Sinus Congestion & Pain," "Advil Allergy & Congestion Relief," "Benadryl Allergy Plus Congestion," "Vicks DayQuil" and "Vicks NyQuil," "Alka-Seltzer Cold and Cough" ("**Purchased Medicines**"),

68.     All the Products, including the Purchased Medicines, are substantially similar:

   a. **Defendant**. All Products, including the Purchased Medicines, are manufactured, sold, marketed, advertised by a Defendant in this action.

   b. **Purpose**. All Products, including the Purchased Medicines, are intended to be consumed.

   c. **Key Ingredients**. All Products, including the Purchased Medicines, list phenylephrine as their active ingredient targeting nasal congestion.

   d. **Marketing Demographics**. All Products, including the Purchased Medicines, are marketed directly to congested consumers for personal consumption.

   e. **Representations.** All Products, including the Purchased Medicines, are marketed and advertised as nasal decongestants.

   f. **Misleading Effect.** The misleading effect of the Challenged Representations on consumers is the same for all Products including the Purchased Medicines— consumers overpay a premium for a product that claims to relieve nasal decongestion when they in fact do not.

**B.     Plaintiffs and Reasonable Consumers Were Misled by the Challenged Representations**

69.     **Advertising and Marketing Misrepresentation of the Products**. Defendants manufacture, market, advertise, and sell the Products as nasal decongestants.

70.    Consumers reasonably understand these statements to mean the Products are scientifically established to relieve pressure in their sinuses and act as a decongestant, when they are not.

71.    **Material**. The Challenged Representations are material to reasonable consumers, including Plaintiffs, because they have the potential to influence consumers' decision to purchase the Products, as set forth herein. Plaintiffs would not have purchased the Products or would have paid significantly less for them if they had known that the Products' advertising and marketing claims were false and misleading and that the Products cannot relieve nasal decongestion.

72.    **Reliance**. Reasonable consumers, including Plaintiffs, reasonably rely on the Products' Challenged Representations in deciding to purchase the Products.

73.    **Falsity**. The Products' Challenged Representations are false and deceptive because the Products do not provide the advertised benefits.

74.    **Consumers Lack Knowledge of Deception/Fraudulence**. Consumers, including Plaintiffs, who purchased the Products, did not know, and had no reason to know, at the time of purchase, that the Products were incapable of providing the advertised benefits.

75.    **Defendant's Knowledge**. Defendants knew, or should have known, that their Products' Challenged Representations were false, misleading, deceptive, and unlawful at the time that Defendant manufactured, marketed, advertised, and sold the Products using the Challenged Representations to Plaintiffs and the Class. Defendants intentionally and deliberately used the Challenged Representations to cause Plaintiff and similarly situated consumers to purchase the Products. Defendants, as manufacturers, have exclusive control over how the Products were marketed and advertised, and Defendants readily and easily could have remedied the deception by stopping the use of the Challenged Representations. Instead, Defendants deliberately chose to market the Products with the Challenged Representations, thereby misleading consumers into buying or overpaying for the Products. Thus, Defendants knew, or should have known, at all relevant times, that the Challenged Representations mislead reasonable consumers, such as

Plaintiffs, into buying the Products to attain the product attributes that Defendant falsely advertised and warranted.

76.    **Detriment**. Plaintiffs and similarly situated consumers would not have purchased the Products if they had known the Products could not provide the advertised benefits or would not have overpaid a price premium for the Products, if they had known that the Challenged Representations were false claimed, promised, warranted, advertised, marketed, and represented. Accordingly, based on Defendants' material misrepresentations, reasonable consumers, including Plaintiffs, purchased the Products to their detriment.

## V.    CLASS ALLEGATIONS

77.    **Class Definition**. Plaintiffs bring this action on their own behalf and on behalf of all other persons similarly situated. The Classes Plaintiffs seeks to represent are defined as follows:

> All residents of Louisiana who, within one year prior to the filing of this Complaint, purchased one or more of the Products for purposes other than resale (the "Louisiana Class").

> All residents of California who, within four years prior to the filing of this Complaint, purchased one or more of the Products for purposes other than resale (the "California Class").

> All residents of Maryland who, within four years prior to the filing of this Complaint, purchased one or more of the Products for purposes other than resale (the "Maryland Class").

> All residents of New Jersey who, within six years prior to the filing of this Complaint, purchased one or more of the Products for purposes other than resale (the "New Jersey Class").

> All residents of North Carolina who, within four years prior to the filing of this Complaint, purchased one or more of the Products for purposes other than resale (the "North Carolina Class").

> All residents of New York who, within three years prior to the filing of this Complaint, purchased one or more of the Products for purposes other than resale (the "New York Class").

> All residents of Texas who, within two years prior to the filing of this Complaint, purchased one or more of the Products for purposes other than resale (the "Texas Class").

> All residents of Connecticut who, within three years prior to the filing of this Complaint, purchased one or more of the Products for purposes other than resale (the "Connecticut Class").

All residents of Virginia who, within two years prior to the filing of this Complaint, purchased one or more of the Products for purposes other than resale (the "Virginia Class").

All residents of Illinois who, within three years prior to the filing of this Complaint, purchased one or more of the Products for purposes other than resale (the "Illinois Class").

("Louisiana Class," "California Class," "Maryland Class," "New Jersey Class," "North Carolina Class," "New York Class," "Texas Class," "Connecticut Class," "Virginia Class," "Illinois Class," collectively, the "Class")

78.     **Class Definition Exclusions**. Excluded from the Class are: (i) Defendants, their assigns, successors, and legal representatives; (ii) any entities in which Defendants have controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and (iv) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

79.     **Reservation of Rights to Amend the Class Definition**. Plaintiffs reserve the right to amend or otherwise alter the class definition presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendants, or otherwise.

80.     **Numerosity**. The Class is so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class number in the thousands or hundreds of thousands throughout California, Maryland, New Jersey, Louisiana, New York, North Carolina, Texas, Virginia, Connecticut, and Illinois.  The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants and third-party retailers and vendors.

81.     **Common Questions Predominate**. Common questions of fact and law predominate over questions which may affect individual class members, including the following:

a.      Whether Defendants knew that oral phenylephrine was ineffective as a nasal decongestant;

b.      Whether Defendants marketed the Products as effective nasal decongestants;

c.      What measures Defendants took to conceal the true nature, i.e., ineffectiveness, of the Products;

d.      Whether Defendant had a duty to disclose the true nature of the Products, i.e., their ineffectiveness as nasal decongestants;

e.      Whether Defendant's conduct constitutes a breach of warranty;

f.      Whether Defendant was unjustly enriched by its deceptive conduct;

g.      Whether Plaintiff and the Class paid more money or a premium amount for the Products than they actually received; and

h.      How much more money or premium amount Plaintiff and the Class paid for the Products than they actually received.

82.     **Typicality**. Plaintiffs' claims are typical of the claims of the Class, and Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained competent and experienced counsel in class action and other complex litigation. Plaintiffs suffered damages as a direct and proximate result of the same wrongful practices in which Defendants engaged to harm the class.

83.     **Adequacy**. Plaintiffs are an adequate representative of the Class they seeks to represent because his interests do not conflict with the interests of the Class Members Plaintiffs seek to represent. Plaintiffs will fairly and adequately protect Class Members' interests and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

84.     **Superiority and Substantial Benefit**. A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of

individual litigation would make it impracticable or impossible for the Class to prosecute their claims individually.

85. **Manageability**. The trial and litigation of Plaintiffs' claims are manageable. Individual litigation of the legal and factual issues raised by Defendants' conduct would increase delay and expense to all parties and the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economics of scale, and comprehensive supervision by a single court.

86. **Injunctive/Equitable Relief**. Defendants have acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole. The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants.

87. **Inconsistent Rulings**. Absent a class action, Defendants will likely retain the benefits of their wrongdoing. Because of the small size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein. Absent a representative action, the Class will continue to suffer losses and Defendants will be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains.

88. Plaintiffs and the Class have suffered injury in fact and have lost money because of Defendants' false representations. Plaintiffs and the Class purchased the Products under the false belief that the Products could provide the advertised benefits. Plaintiffs and the Class relied upon Defendants' advertising and marketing claims and would not have purchased the Products, or would paid significantly less for them if they had known that the Products could not provide the advertised benefits.

## CAUSES OF ACTION

## COUNT ONE

**Violation of California Consumers Legal Remedies Act,**

**(California Civil Code 1750, *et seq.*)**

***(On Behalf of the California Class)***

89.     **Incorporation by Reference**. Plaintiffs Lateef Murdock, Gwen Lewi, Jose Cortez Hernandez, and Elie El Rai re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

90.     **California Class**. Plaintiffs Murdock, Lewi, Cortez Hernandez, and Elie El Rai bring this claim individually and on behalf of the California Class who purchased the Products within the applicable statute of limitations.

91.     **CLRA Standard**. The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

92.     **Goods/Services**. The Products are "goods," as defined by the CLRA in California Civil Code §1761(a).

93.     **Defendant**. Defendants are each a "person," as defined by the CLRA in California Civil Code §1761(c).

94.     **Consumers**. Plaintiffs and members of the Class are "consumers," as defined by the CLRA in California Civil Code §1761(d).

95.     **Transactions**. The purchase of the Products by Plaintiffs and members of the Class are "transactions" as defined by the CLRA under California Civil Code section 1761(e).

96.     **Violations of the CLRA**. Defendants violated the following sections of the CLRA by advertising and selling the Products to Plaintiffs and the Class through the false, misleading, deceptive, and fraudulent Challenged Representations:

> a.  Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which they do not have."

24

    b.   Section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . [when] they are of another."

    c.   Section 1770(a)(9) by advertising the Products "with [the] intent not to sell them as advertised."

97.    **Knowledge**. Defendants' uniform material representations regarding the Products were likely to deceive, and Defendants knew or should have known that its representations were untrue and misleading.

98.    **Malicious**. Defendants' conduct is malicious, fraudulent, and wanton in that Defendant intentionally misled and withheld material information from consumers, including Plaintiffs, to increase the sales of the Products.

99.    **Plaintiff Could Not Have Avoided Injury**. Plaintiffs and members of the Class could not have reasonably avoided such injury. Plaintiffs and members of the Class were unaware of the existence of the facts that Defendants suppressed and failed to disclose, and Plaintiffs and members of the Class would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

100.    **Causation/Reliance/Materiality**. Plaintiffs and the Class suffered harm as a result of Defendants' violations of the CLRA because they purchased the Products relying on the Challenged Representations in deciding to purchase the Products. The Challenged Representations were a substantial factor. The Challenged Representations were material because a reasonable consumer would consider them important in deciding whether to purchase the Products.

101.    **Injunction**. Given that Defendants' conduct violated California Civil Code section 1780, Plaintiff and members of the Class are entitled to seek, and do hereby seek, injunctive relief to put an end to Defendant's violations of the CLRA. Plaintiffs have no adequate remedy at law. Without equitable relief, Defendants' unfair and deceptive practices will continue to harm Plaintiffs and the Class.

**COUNT TWO**

**Violation of California False Advertising Law,**

**(Business & Professions Code 17500, *et seq*.)**

**(*On Behalf of the California Class*)**

102.    **Incorporation by Reference**. Plaintiffs Lateef Murdock, Gwen Lewi, Jose Cortez Hernandez, and Elie El Rai re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

103.    **California Class**. Plaintiffs Murdock, Lewi, Cortez Hernandez, and Elie El Rai bring this claim individually and on behalf of the California Class who purchased the Product within the applicable statute of limitations.

104.    **FAL Standard**.  The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

105.    **False & Material Challenged Representations Disseminated to Public**. Defendants violated § 17500 when it advertised and sold the Products through unfair, deceptive, untrue, and misleading Challenged Representations disseminated to the public through the Products' marketing and advertising. These representations were false because the Products did not conform to them. The representations were material because they are likely to mislead a reasonable consumer into purchasing the Products.

106.    **Knowledge**. In making and disseminating the Challenged Representations alleged herein, Defendants knew or should have known that the representations were untrue or misleading and acted in violation of § 17500.

107.    **Intent to sell**. Defendants' conduct was specifically designed to induce reasonable consumers, like Plaintiffs and the Class, to purchase the Products.

108.    **Causation/Damages**. As a direct and proximate result of Defendants' misconduct in violation of the FAL, Plaintiffs and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to,

the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiffs seeks a monetary award for violation of the FAL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the Class for said monies, as well as injunctive relief to enjoin Defendants' misconduct to prevent ongoing and future harm that will result.

## COUNT THREE

### Violation of California Unfair Competition Law,

### (Business & Professions Code Section 17200, *et seq.*)

### (*On Behalf of the California Class*)

109. **Incorporation by Reference**. Plaintiffs Lateef Murdock, Gwen Lewi, Jose Cortez Hernandez, and Elie El Rai re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

110. **California Class.** This cause of action is brought pursuant to Business and Professions Code Section 17200, *et seq.*, on behalf of Plaintiffs Murdock, Lewi, Cortez Hernandez, and Elie El Rai and the California Class who purchased the Product within the applicable statute of limitations.

111. **The UCL**. California Business & Professions Code, sections 17200, *et seq.* (the "UCL") prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

112. **False Advertising Claims**. Defendants, in their advertising and marketing of the Products, made misleading statements regarding the quality and characteristics of the Products— specifically, Defendants advertised and marketed the Products as effective nasal decongestants despite the Products' inclusion of phenylephrine, which is no more effective than a placebo.

113. **Defendants' Deliberately Fraudulent Marketing Scheme**. Defendants do not have any reasonable basis for the claims about the Products made in Defendants' advertising and marketing of the Products because the Products cannot provide the advertised benefits. Defendants

knew and continues to know that the Products cannot provide the advertised benefits (i.e., nasal decongestion or congestion relief), though Defendants intentionally advertised and marketed the Products to deceive reasonable consumers into believing that they could achieve the advertised benefits.

114.    **Misleading Advertising and Marketing Cause Purchase of Products**. Defendants' advertising and marketing of the Products using the Challenged Representations continues to lead reasonable consumers, including Plaintiffs, to believe the Products can truly relieve congestion, when they cannot.

115.    **Injury in Fact**. Plaintiffs and the Class have suffered injury in fact and have lost money or property as a result of and in reliance upon Defendant's Challenged Representations— namely, Plaintiffs and the Class lost the money they paid for the Products they purchased from Defendant.

116.    **Conduct Violates the UCL**. Defendants' conduct, as alleged herein, constitutes unfair, unlawful, and fraudulent business practices pursuant to the UCL. The UCL prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising." Cal. Bus & Prof. Code § 17200. In addition, Defendants' use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise that are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code Sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code Section 17200.

117.    **No Reasonably Available Alternatives/Legitimate Business Interests**. Defendants failed to avail itself of reasonably available, lawful alternatives to further its legitimate business interests.

118.    **Business Practice**. All the conduct alleged herein occurred and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern, practice and/or generalized course of conduct, which will continue daily until Defendants voluntarily alter their conduct or Defendants are otherwise ordered to do so.

119.    **Injunction**. Pursuant to Business and Professions Code Sections 17203 and 17535, Plaintiffs and the Class seek an order from this Court enjoining Defendants from continuing to engage, use, or employ its practice of marketing and advertising the Products to relieve sinus congestion when they do not. Plaintiffs and the members of the Class also seek an order requiring Defendants to disclose such information and/or precluding Defendants from selling the Products.

120.    **Causation/Restitution**. As a direct and proximate result of Defendants' misconduct in violation of the UCL, Plaintiffs and the Class were harmed in the amount of the purchase price they paid for the Products. Plaintiffs and the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiffs seek restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the Class for said monies, as well as injunctive relief to enjoin Defendants' misconduct to prevent ongoing and future harm that will result.

### *"Unfair" Prong*

121.    **Unfair Standard**. Under the UCL, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California,* 142 Cal. App. 4th 1394, 1403 (2006).

122.    **Injury**. Defendants' false marketing and advertising of the Products with the Challenged Representations does not confer any benefit to consumers; rather, doing so causes injuries to consumers, who do not receive Products commensurate with their reasonable expectations, and receive a Product of lesser standards than what they reasonably expected to receive. Consumers cannot avoid any of the injuries caused by Defendants' deceptive marketing

and advertising of the Products. The injuries caused by Defendant's deceptive marketing and advertising outweigh any benefits.

123. **Balancing Test**. Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1169 (9th Cir. 2012).

124. **No Utility**. Under this test, Defendants' conduct of falsely marketing and advertising the Products as effective nasal decongestants have no utility and rather, harms purchasers. Thus, the utility of Defendant's conduct is substantially outweighed by the gravity of harm.

125. **Legislative Declared Policy**. Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.,* 504 F. 3d 718, 735 (9th Cir. 2007).

126. **Unfair Conduct**. Defendants' marketing and advertising of the Products, as alleged herein, is deceptive, misleading, and unreasonable, and constitutes unfair conduct. Defendants knew or should have known of its unfair conduct. Defendants' representations constitute an unfair business practice within the meaning of California Business and Professions Code Section 17200.

127. **Reasonably Available Alternatives**. Defendants had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendants could have refrained from selling the Products.

128. **Defendant's Wrongful Conduct**. All the conduct alleged herein occurs and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

129. **Injunction**. Pursuant to Business and Professions Code Sections 17203, Plaintiffs and the Class seek an order of this Court enjoining Defendants from continuing to engage, use, or employ its practice of marketing and advertising the Products as nasal decongestants.

130.    **Causation/Restitution**. Plaintiffs and the Class have suffered injury in fact, have lost money, as a result of Defendants' unfair conduct. Plaintiffs and the Class paid for a Product that could supposedly help nasal decongestion when it cannot. Plaintiffs and the Class would not have purchased the Products if they had known that the Products' advertising and marketing were deceptive. Accordingly, Plaintiffs seek restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

### *"Fraudulent" Prong*

131.    **Fraud Standard**. The UCL considers conduct fraudulent (and prohibits said conduct) if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

132.    **Fraudulent & Material Challenged Representations**. Defendants marketed and advertised the Products as nasal decongestants. These representations were deceptive, and Defendants knew or should have known of its deception. The representations are likely to mislead consumers into purchasing the Products because they are material to the average, ordinary, and reasonable consumer.

133.    **Fraudulent Business Practice**. As alleged herein, the representations by Defendants constitute a fraudulent business practice in violation of California Business & Professions Code Section 17200.

134.    **Reasonable and Detrimental Reliance**. Plaintiffs and the Class reasonably and detrimentally relied on the marketing and advertising on the Products to their detriment in that they purchased the Products without receiving the advertised benefits.

135.    **Reasonably Available Alternatives**. Defendants had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendants could have refrained from selling the Products.

136.    **Business Practice**. All the conduct alleged herein occurs and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct.

137.    **Injunction**. Pursuant to Business and Professions Code Sections 17203, Plaintiffs and the Class seek an order of this Court enjoining Defendants from continuing to engage, use, or employ its practice of marketing and advertising the Products as nasal decongestants..

138.    **Causation/Restitution**. Plaintiffs and the Class have suffered injury in fact and have lost money due to Defendant's fraudulent conduct. Plaintiffs and the Class paid for a product that they believed would help with nasal decongestion.

139.    Plaintiffs and the Class would not have purchased the Products if they had known the truth. Accordingly, Plaintiff seeks restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

### *"Unlawful" Prong*

140.    **Unlawful Standard**. The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

141.    **Violations of CLRA and FAL**. Defendants' marketing and advertising of the Products, as alleged herein, violates California Civil Code sections 1750, *et seq.* and California Business and Professions Code sections 17500, *et seq.* as set forth below in the sections regarding those causes of action.

142.    **Additional Violations**. Defendants' conduct in making the deceptive representations described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to their competitors. This conduct engenders an unfair competitive advantage for Defendants, thereby constituting an unfair, fraudulent and/or unlawful business practice under California Business & Professions Code sections 17200-17208. Additionally, Defendants' representations of material facts, as set forth herein, violate California Civil Code sections 1572, 1573, 1709, 1710, and 1711, as well as the common law.

143.    **Unlawful Conduct**. Defendants' marketing and advertising of the Products, as alleged herein, is deceptive, misleading, and unreasonable, and constitutes unlawful conduct. Defendant knew or should have known of its unlawful conduct.

144.    **Reasonably Available Alternatives**. Defendants had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendants could have refrained from selling the Products.

145.    **Business Practice**. All the conduct alleged herein occurs and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct.

146.    **Injunction**. Pursuant to Business and Professions Code Section 17203, Plaintiffs and the Class seek an order from this Court enjoining Defendants from continuing to engage, use, or employ its practice of marketing and advertising the Products as nasal decongestants.

147.    **Causation/Restitution**. Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Defendants' unlawful conduct. Plaintiff and the Class paid an unwarranted premium for the Products. Plaintiffs and the Class would not have purchased the Products if they had known that Defendants purposely deceived consumers into believing that the Products could provide the advertised benefits. Accordingly, Plaintiffs seek restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

## COUNT FOUR

### Breach of Express Warranty

#### (*On Behalf of all Plaintiffs against All Defendants*)

148.    **Incorporation by Reference**. Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

149.    Plaintiffs brings this claim individually and on behalf of the Class who purchased the Products within the applicable statute of limitations.

150.    **Implied Warranty of Merchantability**. By advertising and selling the Products at issue, Defendants, merchants of goods, made promises and affirmations of fact that the Products

are merchantable and conform to the promises or affirmations of fact made through its marketing and advertising, as described herein. This marketing and advertising, combined with the implied warranty of merchantability, constitute warranties that became part of the basis of the bargain between Plaintiffs and members of the Class and Defendants—to wit, that the Products, among other things, could provide the advertised benefits.

151.    **Breach of Warranty**. Contrary to Defendants' warranties, the Products do not conform to the Products' representation that medicine provides nasal relief and decongestion, and, therefore, Defendants breached their warranties about the Products and their qualities.

152.    **Causation/Remedies**. As a direct and proximate result of Defendants' breach of warranty, Plaintiffs and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiffs seek a monetary award for breach of warranty in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the Class for said monies, as well as injunctive relief to enjoin Defendants' misconduct to prevent ongoing and future harm that will result.

## COUNT FIVE

### Unjust Enrichment/Restitution

### (*On Behalf of All Plaintiffs against All Defendants*)

153.    **Incorporation by Reference**. Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

154.    Plaintiffs bring this claim individually and on behalf of members of the Class who purchased the Products within the applicable statute of limitations.

155.    **Plaintiff/Class Conferred a Benefit**. By purchasing the Products, Plaintiffs and members of the Class conferred a benefit on Defendants in the form of the purchase price of the Products.

156.    **Defendant's Knowledge of Conferred Benefit**. Defendants had knowledge of such benefit and Defendants appreciated the benefit because, were consumers not to purchase the Products, Defendants would not generate revenue from the sales of the Products.

157.    **Defendant's Unjust Receipt Through Deception**. Defendants' knowing acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendants' fraudulent, misleading, and deceptive representations.

158.    **Causation/Restitution**. As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiffs seek a monetary award for unjust enrichment in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the Class for said monies, as well as injunctive relief to enjoin Defendants' misconduct to prevent ongoing and future harm that will result.

## COUNT SIX

### Violation of the New Jersey Consumer Fraud Act

### (N.J.S.A 56:8-1, *et seq.*)

### (*On Behalf of the New Jersey Class*)

159.    **Incorporation by Reference**. Plaintiff Marcel Perez Pirio re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

160.    **New Jersey Class.** Plaintiff Pirio brings this claim on behalf of himself and the New Jersey Class against all Defendants.

161.    **Merchandise.** At all relevant times, the Products at issue constituted "merchandise" as defined by N.J.S.A 56:8-1(e).

162.    **Sale.** At all relevant times, Defendants' sales and/or distribution of the

Decongestant Products at issue met the definition of "sale" set forth by N.J.S.A. 56:8-1(e).

163.    **New Jersey Standard.** 67. N.J.S.A. 56:8-2 provides that "[t]he act, use or employment by any person of any unconscionable practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of material fact with the intent that others rely upon such concealment, suppression or omission, ... is declared to be an unlawful practice..."

164.    **Knowledge**. Defendants' uniform material representation of the Products were likely to deceive reasonable consumers seeking congestion relief and Defendants knew or should have known that its representations were untrue or misleading.

165.    As alleged herein, Defendants sold the Products to Plaintiff and each other Class Member as products that provide relief for nasal congestion. Yet Defendants knew that phenylephrine is ineffective.

166.    Defendants therefore engaged in practices that are unconscionable, deceptive, and fraudulent and that are based on false pretenses and the knowing concealment, suppression, or omission of material fact with the intent that others rely upon such concealment, suppression or omission in their manufacturing, selling, and distribution of their Products. Defendants therefore violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq.

167.    **Causation/Reliance/Materiality.** As a direct and proximate result of Defendants' improper conduct, Plaintiffs and the other members of the Class have suffered damages and ascertainable losses of moneys, by paying more for Products than they would have, and/or by purchasing Products that they would not have purchased, in amounts to be determined at trial.

**COUNT SEVEN**

**Violation of Louisiana Fraudulent Misrepresentation Law**

**(LA Civ. Code Tit. IV, Art. 1953, *et seq.*)**

**(*On Behalf of the Louisiana Class*)**

168.    **Incorporation by Reference**. Plaintiff Amy Weinberg re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth

herein.

169.     **Louisiana Class.** Plaintiff Weinberg brings this claim on behalf of herself and the Louisiana Class against all Defendants.

170.     **Louisiana Fraud Standard**. LA Civ. Code Art. 1953 provides that fraud is "a misrepresentation or a suppression of the truth with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction."

171.     **Misrepresentation.** Defendants misrepresented the effectiveness of the Products in their marketing and advertising to induce Plaintiff and the Louisiana Class to purchase the Products.

172.     **Omission.** Defendants were silent on, and did not take action to correct, their material misrepresentation that the Products were effective nasal decongestants.

173.     **Knowledge**. Defendants knew or should have known the Products contained a material misrepresentation regarding their effectiveness as a nasal decongestant based on scientific investigation and regulatory action.

174.     **Lack of Personal Knowledge and Expertise**. Plaintiff and Louisiana Class members are not personally familiar with, and do not possess any specialized knowledge skill, experience, or education, in the manufacture of OTC medication.  Therefore, Plaintiff and Louisiana Class members have no way of determining whether Defendants' Products can provide decongestive relief and were justified in their reliance on Defendants' misrepresentation.

175.     **Unfair Advantage**. As a result of Defendants' misrepresentations on the effectiveness of the Products, their knowledge of those misrepresentations, and Plaintiff and Louisiana Class members' reliance on Defendant, Defendants obtained an unfair advantage.

176.     **Causation/Reliance/Materiality.** As a direct and proximate result of Defendants' improper conduct, Plaintiffs and the other members of the Class have suffered damages and ascertainable losses of moneys, by paying more for Products than they would have,

and/or by purchasing Products that they would not have purchased, in amounts to be determined at trial.

## COUNT EIGHT

**Violation of Louisiana Unfair Trade Practices and Consumer Protection Law**

**(Stat. Ann. §§ 51-1401, *et seq.*)**

**(*On Behalf of the Louisiana Class*)**

177.    **Incorporation by Reference**. Plaintiff Amy Weinberg re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

178.    **Louisiana Class.** Plaintiff Weinberg brings this claim on behalf of herself and the Louisiana  Class against all Defendants.

179.    **Jurisdiction**. Defendants do business in Louisiana, sells and distributes the Products in Louisiana, and engaged in deceptive acts and practices in their manufacturing, selling, and marketing of the Products in Louisiana.

180.    **Louisiana Standard.** Plaintiff and the Class are "consumers" within the meaning of LA. Rev. Stat. §51:1402(1).

181.    Defendants engaged in "trade" or "commerce" within the meaning of La. Rev. Stat. § 51:1402(9).

182.    The Louisiana Unfair Trade and Practices and Consumer Protection Law ("Louisiana CPL") makes unlawful "deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. § 51:1405(A).

183.    **Deceptive Act or Practice**. Defendants', as alleged above, have in the course of trade and commerce, knowingly engaged in false, misleading, and deceptive acts and practices declared unlawful under La. Rev. Stat. § 51:1405(A) as follows: by falsely representing that their Products provide relief for nasal congestion; by failing to disclose that phenylephrine contained in their Products does not provide relief for nasal congestion despite knowing about this fact.

184.    Defendants' uniform material representation of the Products were likely to

38

deceive reasonable consumers seeking congestion relief and Defendants knew that its representations were untrue or misleading. Defendants intended that Plaintiff and the Louisiana Class rely on the misleading representations in their making their purchase decision.

185.    As alleged herein, Defendants sold the Products to Plaintiff and each other Louisiana Class member as products that provide relief for nasal congestion. Yet Defendants knew that phenylephrine is ineffective.

186.    **Knowledge**. Defendants' uniform material representation of the Products were likely to deceive reasonable consumers seeking congestion relief and Defendants knew or should have known that its representations were untrue or misleading.

187.    **Course of Commerce.** Defendants deceptions occurred, at all relevant times, in a course of conduct involving trade and commerce, as they occurred during the manufacturing, selling, and marketing of the Products.

188.    Defendants therefore engaged in unfair methods of competition and unfair or deceptive acts or practices with intent that others rely upon the concealment, suppression or omission of such material fact in their manufacturing, selling, and marketing the Products. Defendants therefore violated Louisiana CPL.

189.    **Causation/Reliance/Materiality.** As a direct and proximate result of Defendants' improper conduct, Plaintiffs and the other members of the Class have suffered damages and ascertainable losses of moneys, by paying more for Products than they would have, and/or by purchasing Decongestant Products that they would not have purchased, in amounts to be determined at trial.

190.    Pursuant to La. Rev. Stat. § 51:1409, Plaintiff and the Class seek to recover actual damages in an amount to be determined at trial; treble damages for Defendants knowing violations of the Louisiana CPL; an order enjoining Defendants unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under La. Rev. Stat. § 51:1409.

## COUNT NINE

**Violation of the Texas Deceptive Trade Practices and Consumer Protection Act**

**(Tex. Bus. & Com. Code § 17.41, *et seq*)**

**(*On Behalf of the Texas Class*)**

191.    **Incorporation by Reference**. Plaintiff Robert Lundin re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

192.    **Texas Class.** Plaintiff Lundin brings this claim on behalf of himself and the Texas Class against all Defendants.

193.    **Jurisdiction**. Defendants do business in Texas, sells and distributes the Products in Texas, and engaged in deceptive acts and practices in their manufacturing, selling, and marketing of the Products in Texas.

194.    **Texas Standard.** Tex. Bus. & Com. Code § 17.46 (a) prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Pursuant to Tex. Bus. & Com. Code § 17.46 (b), the term "false, misleading, or deceptive acts or practices" include, inter alia, the following:

    a.  Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;

    b.  Representing that goods or services are of a particular standard, quality, or grade;

    c.  Failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed;

195.    **Deceptive Act or Practice**. Defendants', as alleged above, have in the course of trade and commerce, knowingly engaged in false, misleading, and deceptive acts and practices declared unlawful under Tex. Bus. & Com. Code § 17.46 as follows: by falsely representing that their Products provide relief for nasal congestion; by failing to disclose that phenylephrine

contained in their Products does not provide relief for nasal congestion despite knowing about this fact.

196.    Defendants' uniform material representation of the Products were likely to deceive reasonable consumers seeking congestion relief and Defendants knew that its representations were untrue or misleading. Defendants intended that Plaintiff and the Texas Class rely on the misleading representations in their making their purchase decision.

197.    As alleged herein, Defendants sold the Products to Plaintiff and each other Texas Class member as products that provide relief for nasal congestion. Yet Defendants knew that phenylephrine is ineffective.

198.    **Knowledge**. Defendants' uniform material representation of the Products were likely to deceive reasonable consumers seeking congestion relief and Defendants knew or should have known that its representations were untrue or misleading.

199.    **Course of Commerce.** Defendants' deceptions occurred, at all relevant times, in a course of conduct involving trade and commerce, as they occurred during the manufacturing, selling, and marketing of the Products.

200.    Defendants therefore engaged in unfair methods of competition and unfair or deceptive acts or practices with intent that others rely upon the concealment, suppression or omission of such material fact in their manufacturing, selling, and marketing the Products. Defendants therefore violated Texas Deceptive Trade Practices and Consumer Protection Act, Tex. Bus. & Com. Code § 17.41, *et seq*.

201.    **Injunction**. Given that Defendants' conduct violated Tex. Bus. & Com. Code § 17.41, *et seq*, Plaintiff and members of the Class are entitled to seek, and do hereby seek, injunctive relief to put an end to Defendant's violations of the Tex. Bus. & Com. Code § 17.41, *et seq*. Plaintiff and members of the Class have no adequate remedy at law. Without equitable relief, Defendants' unfair and deceptive practices will continue to harm Plaintiffs and the Class.

## COUNT TEN

### Violation of the Connecticut Unfair Trade Practices Act

### (Conn. Gen. Stat. Ann. § 42-110a, *et seq*)

### (*On Behalf of the Connecticut Class*)

202.    **Incorporation by Reference**. Plaintiff Jaedon Daniels re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

203.    **Connecticut Class**. Plaintiff Daniels brings this claim on behalf of himself and the Connecticut Class against all Defendants.

204.    **Jurisdiction**. Defendants do business in Connecticut, sells and distributes the Products in Connecticut, and engaged in deceptive acts and practices in their manufacturing, selling, and marketing of the Products in Connecticut.

205.    Defendants, Plaintiffs, and the Class members are "[p]ersons" within the meaning of Conn. Gen. Stat. Ann. § 42-110a(4).

206.    **Connecticut Standard.** The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. Ann. §42-110b(a).

207.    **Deceptive Act or Practice**. Defendants', as alleged above, have in the course of trade and commerce, knowingly engaged in false, misleading, and deceptive acts and practices declared unlawful under Connecticut UTPA as follows: by falsely representing that their Products provide relief for nasal congestion; by failing to disclose that phenylephrine contained in their Products does not provide relief for nasal congestion despite knowing about this fact.

208.    Defendants' uniform material representation of the Products were likely to deceive reasonable consumers seeking congestion relief and Defendants knew that its representations were untrue or misleading. Defendants intended that Plaintiff and the Connecticut Class rely on the misleading representations in their making their purchase decision.

209.    As alleged herein, Defendants sold the Products to Plaintiff and each other Connecticut Class member as products that provide relief for nasal congestion. Yet Defendants knew that phenylephrine is ineffective.

210.    **Knowledge**. Defendants' uniform material representation of the Products were likely to deceive reasonable consumers seeking congestion relief and Defendants knew or should have known that its representations were untrue or misleading.

211.    **Course of Commerce**. Defendants' deceptions occurred, at all relevant times, in a course of conduct involving trade and commerce, as they occurred during the manufacturing, selling, and marketing of the Products.

212.    Defendants therefore engaged in unfair methods of competition and unfair or deceptive acts or practices with intent that others rely upon the concealment, suppression or omission of such material fact in their manufacturing, selling, and marketing the Products. Defendants therefore violated Connecticut UTPA.

213.    **Causation/Reliance/Materiality.** As a direct and proximate result of Defendants' improper conduct, Plaintiffs and the other members of the Class have suffered damages and ascertainable losses of moneys, by paying more for Products than they would have, and/or by purchasing Decongestant Products that they would not have purchased, in amounts to be determined at trial.

214.    Plaintiffs and the Class members were aggrieved by Defendants' violations of the Connecticut UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

215.    Specifically, Plaintiff and the Class members were deceived by Defendants' misrepresentations, omissions, concealments, and failures to disclose material facts regarding their Products. Had Defendants not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

216.    Defendants' violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

217.    As a result of Defendants' violations of the Connecticut UTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Connecticut UTPA.

**COUNT ELEVEN**

**Violation of the Virginia Consumer Protection Act**

**(Va. Code Ann. § 59.1-196)**

**(*On Behalf of the Virginia Class*)**

218.    **Incorporation by Reference**. Plaintiff Michael Wyllon re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

219.    **Virginia Class**. Plaintiff Wyllon brings this claim on behalf of himself and the Virginia Class against all Defendants.

220.    **Jurisdiction**. Defendants do business in Virginia, sell and distribute the Products in Virginia, and are engaged in deceptive acts and practices in their manufacturing, selling, and marketing of the Products in Virginia.

221.    Each Defendant is a "supplier" under Va. Code Ann. § 59.1-198.

222.    The sale of the Products that falsely state that they provide relief for nasal congestion to Class members was a "consumer transaction" within the meaning of Va. Code Ann. § 59.1-198.

223.    **Virginia Standard.** The Virginia Consumer Protection Act ("Virginia CPA") lists prohibited "practices" which include: "5. Misrepresenting that goods or services have certain characteristics;" "6. Misrepresenting that goods or services are of a particular standard, quality,

grade style, or model;" and "14. Using any other deception, fraud, or misrepresentation in connection with a consumer transaction." Va. Code Ann. § 59.1-200

224.    **Deceptive Act or Practice**. Defendants, as alleged above, have in the course of trade and commerce, knowingly engaged in false, misleading, and deceptive acts and practices declared unlawful under Virginia CPA as follows: by falsely representing that their Products provide relief for nasal congestion; by failing to disclose that phenylephrine contained in their Products does not provide relief for nasal congestion despite knowing about this fact.

225.    Defendants' uniform material representations of the Products were likely to deceive reasonable consumers seeking congestion relief and Defendants knew that its representations were untrue or misleading. Defendants intended that Plaintiff and the Connecticut Class rely on the misleading representations in their making their purchase decision.

226.    As alleged herein, Defendants sold the Products to Plaintiff and each other Connecticut Class member as products that provide relief for nasal congestion. Yet Defendants knew that phenylephrine is ineffective.

227.    **Knowledge**. Defendants' uniform material representations of the Products were likely to deceive reasonable consumers seeking congestion relief and Defendants knew or should have known that its representations were untrue or misleading.

228.    **Course of Commerce.** Defendants' deceptions occurred, at all relevant times, in a course of conduct involving trade and commerce, as they occurred during the manufacturing, selling, and marketing of the Products.

229.    Defendants therefore engaged in unfair methods of competition and unfair or deceptive acts or practices with intent that others rely upon the concealment, suppression or omission of such material fact in their manufacturing, selling, and marketing the Products. Defendants therefore violated Virginia CPA.

230.    **Causation/Reliance/Materiality.** As a direct and proximate result of Defendants' improper conduct, Plaintiffs and the other members of the Class have suffered damages and ascertainable losses of moneys, by paying more for Products than they would have, and/or by

purchasing Decongestant Products that they would not have purchased, in amounts to be determined at trial.

231.    Plaintiffs and the Class members were aggrieved by Defendants' violations of the Virginia CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

232.    Specifically, Plaintiff and the Class members were deceived by Defendants' misrepresentations, omissions, concealments, and failures to disclose material facts regarding their Products. Had Defendants not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

233.    Defendants' violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

234.    As a result of Defendants' violations of the Virginia CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Virginia CPA.

## COUNT TWELVE

### Violation of New York General Business Law

### (GBL 349, 350, *et seq*)

### (*On Behalf of the New York Class*)

235.    **Incorporation by Reference**. Plaintiffs Dimitri Lamdon and Tatyana Dekhtyar re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

236.    **New York Class.** Plaintiffs Lamdon and Dekhtyar bring this claim on behalf of themselves and the New York Class against all Defendants.

237. **Jurisdiction**. Defendants do business in New York, sell and distribute the Products in New York, and engaged in deceptive acts and practices in their manufacturing, selling, and marketing of the Products in New York.

238. **GBL § 349 Standard.** NY GBL 349, *et seq* provides "deceptive acts or practices in the conduct of any business, trade or commerce… are hereby declared unlawful."

239. **Deceptive Act or Practice**. Defendants' uniform material representations of the Products were likely to deceive reasonable consumers seeking congestion relief and Defendants knew that its representations were untrue or misleading. Defendants intended that Plaintiffs and the New York Class rely on the misleading representations in their making their purchase decision.

240. As alleged herein, Defendants sold the Products to Plaintiffs and each New York Class member as products that provide relief for nasal congestion. Yet Defendants knew that phenylephrine is ineffective.

241. **Knowledge**. Defendants' uniform material representations of the Products were likely to deceive reasonable consumers seeking congestion relief and Defendants knew or should have known that its representations were untrue or misleading.

242. **Course of Commerce.** Defendants' deceptions occurred, at all relevant times, in a course of conduct involving trade and commerce, as they occurred during the manufacturing, selling, and marketing of the Products.

243. Defendants therefore engaged in unfair methods of competition and unfair or deceptive acts or practices with intent that others rely upon the concealment, suppression, or omission of such material fact in their manufacturing, selling, and marketing the Products. Defendants therefore violated the New York General Business Law 349, *et seq*.

244. **Causation/Reliance/Materiality.** As a direct and proximate result of Defendants' improper conduct, Plaintiffs and the other members of the Class have suffered damages and ascertainable losses of moneys, by paying more for Products than they would have, and/or by purchasing Products that they would not have purchased, in amounts to be determined at trial, pursuant to NY GBL 349(b) and 350(d).

## COUNT THIRTEEN

**Violation of the North Carolina Unfair and Deceptive Trade Practices Act**

**(NC Gen. Stat. 75-1.1)**

***(On Behalf of the North Carolina Class)***

245.    **Incorporation by Reference**. Plaintiff Layne Barter re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

246.    **North Carolina Class.** Plaintiff Barter brings this claim on behalf of herself and the North Carolina Class against all Defendants.

247.    **Jurisdiction**. Defendants do business in North Carolina, sell and distribute the Products in North Carolina, and engage in deceptive acts and practices in their manufacturing, selling, and marketing of the Products in North Carolina.

248.    **North Carolina Standard.** NC Gen. Stat. § 75-1.1, *et seq* prohibits "unfair or deceptive acts or practices in or affecting commerce." An act is unfair or deceptive when that act "possessed the tendency or capacity to mislead, or created the likelihood of deception." *See,* Boyd v. Drum, 129 N.C. App. 586, 593, 501 S.E.2d 91, 97 (1998).

249.    **Deceptive Act and Misrepresentation**. Defendants' uniform material representation of the Products were likely to deceive reasonable consumers seeking congestion relief and Defendants knew or should have known that their representations were untrue and misleading. Defendants intended, or reasonably should have known, that Plaintiff and the North Carolina Class rely on the misleading representations in making their purchase decision.

250.    As alleged herein, Defendants sold the Products to Plaintiff and each other North Carolina member as products that provide relief for nasal congestion. Yet Defendants knew that phenylephrine is ineffective. Therefore, the Products possessed the tendency to mislead.

251.    **Knowledge**. Defendants' uniform material representations of the Products were likely to deceive reasonable consumers seeking congestion relief and Defendants knew or should have known that its representations were untrue and misleading.

252.    Defendants knew or should have known the Products contained a material

misrepresentation regarding their effectiveness as a nasal decongestant based on scientific investigation and regulatory action.

253.    **Course of Commerce.** Defendants' deceptions occurred, at all relevant times, in a course of conduct involving trade and commerce, as they occurred during the manufacturing, selling, and marketing of the Products.

254.    Defendants therefore engaged in deceptive acts or practices with intent that others rely upon the false representation that the Products have a "use," "characteristic," or "benefit in their manufacturing, selling, and marketing the Products. Defendants therefore violated the North Carolina Unfair and Deceptive Trade Practices Act.

255.    **Reliance.** Plaintiff and North Carolina Class members are not personally familiar with, and do not possess any specialized knowledge skill, experience, or education, in the manufacture of OTC medication.  Therefore, Plaintiff and North Carolina Class members have no way of determining whether Defendants' Products can provide decongestive relief and must rely on Defendants' deceptive misrepresentations.

256.    **Causation/Materiality.** As a direct and proximate result of Defendants' improper conduct, Plaintiffs and the other members of the Class have suffered damages and ascertainable losses of moneys, by paying more for Products than they would have, and/or by purchasing Products that they would not have purchased, in amounts to be determined at trial.

**COUNT FOURTEEN**

**Violation of the Maryland Consumer Protection Act**

**(MD Code CL 13-301, *et seq*)**

**(*On Behalf of the Maryland Class*)**

257.    **Incorporation by Reference.** Plaintiff Lorette Kenney re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

258.    **Maryland Class.** Ms. Kenney brings this claim on behalf of herself and the Maryland Class against all Defendants.

259.    **Jurisdiction.** Defendants do business in Maryland, sell and distribute the Products in Maryland, and are engaged in deceptive acts and practices in their manufacturing, selling, and marketing of the Products in Maryland.

260.    **Maryland Standard.** MD Code CL 13-301 prohibits unfair, abusive, or deceptive trade practices. MD Code CL 13-301 defines such trade practice as "false, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers." MD Code CL 13-301(2)(i) further provides that a representation that "consumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have," is unfair, abusive, or deceptive.

261.    **Deceptive Trade Practices.** Defendants' uniform material representations of the Products were likely to deceive reasonable consumers seeking congestion relief and Defendants knew that its representations were untrue or misleading. Defendants intended that Plaintiff and the Maryland Class rely on the misleading representations in their making their purchase decision.

262.    As alleged herein, Defendants sold the Products to Plaintiff and each other Maryland Class member as products that provide relief for nasal congestion. Yet Defendants knew that phenylephrine is ineffective.

263.    Therefore, Defendants advertised the Products as having characteristics, uses, and benefits which they did not have.

264.    **Knowledge.** Defendants knew or showed such reckless indifference to the truth as to impute knowledge to them, that the Products contain a material misrepresentation regarding their effectiveness as a nasal decongestant based on scientific investigation and regulatory action.

265.    **Capacity to Mislead.** Plaintiff and the Maryland Class members are not personally familiar with, and do not possess any specialized knowledge skill, experience, or education, in the manufacture of OTC medication.  Plaintiff and the Maryland Class members have no way to determine whether Defendants' Products can provide decongestive relief and were therefore justified in their reliance on Defendants' misrepresentation.

266.     Defendants engaged in unfair, abusive, and deceptive trade practices by misrepresenting the characteristics, uses, and benefits of the Products. Defendants did so with knowledge that these misrepresentations were likely to mislead reasonable consumers. Defendants therefore violated the Maryland Consumer Protection Act, MD Code CL 13-301.

267.     **Causation/Reliance/Materiality.** As a direct and proximate result of Defendants' improper conduct, Plaintiffs and the other members of the Class have suffered damages and ascertainable losses of moneys, by paying more for Products than they would have, and/or by purchasing Decongestant Products that they would not have purchased, in amounts to be determined at trial.

## COUNT FIFTEEN

**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**

**(815 ILCS 505/1, *et seq*)**

**(*On Behalf of the Illinois Class*)**

268.     **Incorporation by Reference**. Plaintiffs Olivia Rodesta and Lauren Debeliso re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

269.     **Illinois Class.** Plaintiffs Rodesta and Debeliso bring this claim on behalf of themselves and the Illinois Class against all Defendants.

270.     **Jurisdiction**. Defendants do business in Illinois, sell and distributes the Products in Illinois, and engage in deceptive acts and practices in their manufacturing, selling, and marketing of the Products in Illinois.

271.     **Consumer Goods**. The Products purchased by the Plaintiffs and Illinois Class were "consumer items" as defined by the Illinois Consumer Fraud Act.

272.     **Illinois Standard.** 815 ILCS 505/1, *et seq* prohibits "unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the

concealment, suppression or omission of such material fact or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' . . . ."

273.    **Deceptive Act or Practice**. Defendants' uniform material representation of the Products were likely to deceive reasonable consumers seeking congestion relief and Defendants knew that its representations were untrue or misleading. Defendants intended that Plaintiff and the Illinois Class rely on the misleading representations in their making their purchase decision.

274.    As alleged herein, Defendants sold the Products to Plaintiffs and each other Illinois Class member as products that provide relief for nasal congestion. Yet Defendants knew that phenylephrine is ineffective.

275.    **Knowledge**. Defendants' uniform material representation of the Products were likely to deceive reasonable consumers seeking congestion relief and Defendants knew or should have known that its representations were untrue or misleading.

276.    **Course of Commerce.** Defendants deceptions occurred, at all relevant times, in a course of conduct involving trade and commerce, as they occurred during the manufacturing, selling, and marketing of the Products.

277.    Defendants therefore engaged in unfair methods of competition and unfair or deceptive acts or practices with intent that others rely upon the concealment, suppression or omission of such material fact in their manufacturing, selling, and marketing the Products. Defendants therefore violated the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1, *et seq.*

278.    **Causation/Reliance/Materiality.** As a direct and proximate result of Defendants' improper conduct, Plaintiffs and the other members of the Class have suffered damages and ascertainable losses of moneys, by paying more for Products than they would have, and/or by purchasing Products that they would not have purchased, in amounts to be determined at trial.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment and relief on all causes of action as follows:

a.  **Certification**: For an order certifying this action as a class action, appointing Plaintiffs as the Class Representatives of their respective state's Classes, and appointing Plaintiffs' Counsel as Class Counsel;

b.  **Declaratory Relief**: For an order declaring that Defendants' conduct violates the statutes and laws referenced herein;

c.  **Injunction**: For an order requiring Defendants to immediately cease and desist from selling the unlawful Products in violation of law; enjoining Defendants from continuing to market, advertise, distribute, and sell the Products in the unlawful manner described herein; requiring Defendants to engage in an affirmative advertising campaign to dispel the public misperception of the Products resulting from Defendants' unlawful conduct; and requiring all further and just corrective action, consistent with permissible law and pursuant to only those causes of action so permitted;

d.  **Damages/Restitution/Disgorgement**: For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiffs and the Class, consistent with permissible law and pursuant to only those causes of action so permitted;

e.  **Attorneys' Fees & Costs**: For an order awarding attorneys' fees and costs, consistent with permissible law and pursuant to only those causes of action so permitted;

f.  **Pre-/Post-Judgment Interest**: For an order awarding pre-judgment and post-judgment interest, consistent with permissible law and pursuant to only those causes of action so permitted; and,

g.  **All Just & Proper Relief**: For such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial on all issues and causes of action so triable.

*[Signatures to Follow on Next Page]*

DATED: October 5, 2023                    Respectfully Submitted,

**AYLSTOCK,    WITKIN,    KREIS    AND
OVERHOLTZ, P.L.L.C.**

/s/ Reagan C. Thomas
  Reagan C. Thomas (SBN: 38522)
  17 E. Main Street Suite 200
  Pensacola, FL 32502
  Tel: (844) 794-7402
  Fax: (850) 202-1010
  Email: *rthomas@awkolaw.com*

**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (*pro hac vice* forthcoming)
*rclarkson@clarksonlawfirm.com*
Shireen M. Clarkson (*pro hac vice* forthcoming)
*sclarkson@clarksonlawfirm.com*
Glenn Danas (*pro hac vice* forthcoming)
*gdanas@clarksonlawfirm.com*
Zarrina Ozari (*pro hac vice* forthcoming)
*zozari @clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiffs*